IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAURA C.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 19 C 1990 |
| v. | ) |
| | ) Magistrate Judge |
| ANDREW SAUL, Commissioner of | ) Maria Valdez |
| Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Laura C.'s claims for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 6] is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 16] is denied.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Andrew Saul has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### I. PROCEDURAL HISTORY

On July 6, 2016, Plaintiff filed a claim for DIB, alleging disability since January 4, 2016 due to neck pain and residual effects of a stroke. The claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 30, 2018. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") and Plaintiff's husband John C. also testified.

On March 13, 2018, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 4, 2016. At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine status post-cervical fusion surgery

with radiculopathy into the left upper extremity and history of cerebral vascular accident (stroke). The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal a listed impairment. Before step four, the ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform light work with the following additional limitations: lifting, carrying, pushing, or pulling twenty pounds occasionally and ten pounds frequently; sitting, standing, and walking for six hours in an eight-hour workday; .

At step four, the ALJ concluded that Plaintiff would be unable to perform her past relevant work as a deli slicer, general clerk, and data entry clerk. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a Plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the Plaintiff presently unemployed? (2) Does the Plaintiff have a severe impairment? (3) Does

the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the Plaintiff unable to perform her former occupation? and (5) Is the Plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the Plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The Plaintiff bears the burden of proof at steps 1-4. *Id.* Once the Plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the Plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence,

4

resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a Plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a Plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

5

**III. ANALYSIS**

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the step 3 analysis was not supported by substantial evidence because it did not account for all of her impairments; and (2) the RFC determination was flawed.[3]

**A. Step 3**

An ALJ's step 3 analysis determines "whether the claimant's impairments are 'severe enough' to be presumptively disabling—that is, so severe that they prevent a person from doing any gainful activity and make further inquiry into whether the person can work unnecessary." *Jeske v. Saul*, 955 F.3d 583, 588 (7th Cir. 2020); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404.1525(a). Plaintiff contends that the ALJ failed to properly analyze her impairments at step 3, but she does not even mention which listing applies to her impairments, let alone establish that her symptoms meet all of the regulatory requirements. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only

---

[3] Plaintiff also argues that the ALJ erred by not including the impairment of left ulnar neuropathy in his step 2 finding. However, "[d]eciding whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even *one* severe impairment" and thus as long as the ALJ identifies a severe impairment, "any error of omission was harmless." *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) (emphasis in original); *see also O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) ("The Step 2 determination is a *de minimis* screening for groundless claims intended to exclude slight abnormalities that only minimally impact a Plaintiff's basic activities.") (citation and internal quotation omitted).

some of those criteria, no matter how severely, does not qualify."). She has therefore not shown that the ALJ's step 3 analysis was in error.

### B. RFC Determination

The day after her alleged onset date in January 2016, Plaintiff underwent cervical fusion surgery which was intended to treat neck pain as well as left arm pain, numbness, and weakness. Diagnostic imaging at the time showed significant spinal issues, including degenerative changes, disc protrusion, moderate to marked central stenosis, with progression of disc bulging with new possible broad-based disc protrusion.

Following that surgery, Plaintiff awoke to numbness of her nose, throat and tongue, and imaging showed findings consistent with subacute lacunar infarction (small stroke). After a few months, she noted improvement in her ability to swallow and speak, and by April 2016, her tongue had almost completely normalized, although she had some balance problems through 2017.

In June 2016, Plaintiff continued to have pain in her left ulnar distribution and stiffness in her cervical spine. She also described problems with gait, neck pain and stiffness, and numbness in her left hand in September 2016. Cervical spine imaging showed mild encroachment on the thecal sac with mild to severe neural foraminal stenosis. She had reduced strength in her left arm, and reduced sensation from two fingers on her left hand up to the upper arm. A nerve conduction study showed moderately severe radiculopathy at left C8-T1 and mild chronic radiculopathy at left C7, and Plaintiff was diagnosed with a herniated cervical disc

7

and cervical radiculopathy at the C8 vertebra. Surgical disc replacement at C7-T1 was recommended. Although Plaintiff was still in pain in December 2016, she wanted a second opinion about whether she should undergo another surgery. Pain and decreased strength and range of motion continued through early 2017, and after an April 2017 consultation with a new neurosurgeon, Plaintiff agreed to proceed with surgery.

Plaintiff underwent a surgical discectomy and fusion at C6-T1 vertebrae in May 2017. Following the surgery, Plaintiff reported good relief of pain. By July 2017, Plaintiff advised she experienced total resolution of pre-operative neck pain, although she continued to have limited range of motion through November 2017. The surgery also improved her left hand numbness, but some diminished sensation in her left ulnar hand remained, and Plaintiff had difficulty with typing and other fine motor tasks.

In concluding that Plaintiff did not suffer from disabling limitations, the ALJ relied heavily on the "significant improvement in pain and cervical radiculopathy symptoms following the claimant's most recent spinal surgery," (R. 27), and substantial evidence supported the ALJ's determination. Plaintiff has not identified any post-July 2017 symptoms that are not accounted for in the RFC. For example, she claims that after the final surgery she continued to suffer from pain and difficulty with tasks such as opening jars, decreased grip strength in her left hand, an abnormal gait, and generalized weakness, but she does not explain why any of those impairments would require a more restrictive RFC.

However, the ALJ did not adequately explain why he did not find Plaintiff disabled for a closed period between her alleged onset date of January 2016 and her final successful spinal surgery in July 2017. *See Summers v. Berryhill*, 864 F.3d 523, 528 n.3 (7th Cir. 2017) ("A claimant may receive an award of temporary benefits if she is disabled for 12 months or longer, even if she later recovers sufficient health to return to work.") (citing 20 C.F.R. § 404.1594); *see also Jackson v. Astrue*, No. 09 C 50028, 2010 WL 4793309, at *13 (N.D. Ill. Nov. 18, 2010) ("That this issue was not exhausted before the ALJ or the Appeals Counsel does not foreclose the court's ability to examine whether consideration of a closed period of disability is appropriate.").

Evidence in the record could support a finding that Plaintiff had disabling symptoms between the surgeries, both from the effects of her small stroke and unresolved spinal issues, but the ALJ failed to discuss it. The ALJ's decision emphasizes medical findings tending to show improvement, such as strength. However, the record also contains ample evidence of pain and other symptoms that ultimately required additional surgery. The ALJ should have more fully discussed those symptoms and explained why they were not disabling for a twelve-month period prior to the time she improved after the July 2017 surgery. *Cf. Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (finding no error where the ALJ "meticulously discussed the evidence" throughout the period at issue). The ALJ's statement that "[e]ven prior to her most recent surgery, the claimant reported that she could drive and shop independently once a week," (R. 27), is unpersuasive

9

evidence that she did not suffer disabling symptoms prior to July 2017. *See Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020) ("An ALJ may not equate activities of daily living with those of a full-time job.").

The opinions of Plaintiff's treating neurosurgeons were given only partial weight because they did not apply to the time after she showed improvement after surgery. But the ALJ did not discuss what weight they should be given for the closed period between the surgeries and did not give adequate reasons for discounting treating specialists' opinions from that time frame. *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). For example, during his April 2017 pre-operative consultation, Dr. Howard An described the January 2016 cervical fusion as "a failed previous surgery." (R. 570.) The ALJ should have explored the extent of the failure and determined whether it resulted in disabling symptoms.

The Court therefore concludes that remand is necessary for a full analysis of whether the record evidence supports a finding that Plaintiff was disabled for a closed period between her alleged onset date of January 4, 2016 and her improvement following the July 2017 surgery.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 6] is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 16] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**                                              **ENTERED:**

**DATE:     June 25, 2020**                     _____
                                                                        **HON. MARIA VALDEZ**
                                                                        **United States Magistrate Judge**

11